**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brenda Lu SMITH, Defendant–Appellant.**

No. 93–3159.

United States Court of Appeals,
Tenth Circuit.

Jan. 6, 1994.

Julie A. Robinson, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with her on the brief), Kansas City, KS, for plaintiff-appellee.

James R. Wyrsch (Ronald D. Lee, Cheryl A. Pilate, with him on the brief) of Wyrsch, Atwell, Miriakian, Lee & Hobbs, P.C., Kansas City, MO, for defendant-appellant.

Before: BALDOCK, ALDISERT *, and BRORBY, Circuit Judges.

ALDISERT, Circuit Judge.

In this appeal by Brenda Lu Smith from her conviction for mail fraud and money laundering, the major question for decision is whether she was entitled to a "good faith" jury instruction as a defense to charges of using the mails to defraud. We hold that she was not.

We must decide also whether the district court erred in including the word "attempt" in the mail fraud jury instruction, in failing to dismiss several counts of the indictment for lack of specificity and in failing to properly apply the Sentencing Guidelines' grouping requirements and prohibition against double counting. We will affirm the judgment of the district court in all respects.

Jurisdiction was proper in the trial court based on 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

* Ruggero J. Aldisert, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

The appeal was timely filed under Rule 4(b) of the Federal Rules of Appellate Procedure.

## I.

Appellant Smith was indicted for her participation in a scheme to defraud foreign and domestic airlines of thousands of dollars. She was charged with two counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of money laundering in violation of 18 U.S.C. § 1957 and one count of forfeiture pursuant to 26 U.S.C. § 7203. Several other counts were dismissed prior to trial.

The Appellant's arrest and conviction stemmed from her operation of Globemaster Travel, a travel agency in Lenexa, Kansas. Globemaster Travel was originally owned by Smith and later sold to local investors, although she stayed on as manager. Globemaster was a member of the Airline Reporting Corporation, an intermediary organization that assists in the transmission of paperwork and funds between the airlines and travel agencies.

Globemaster was required to mail to Airline Reporting each week a report of its cash and credit sales, credit card refunds, cash refunds, ticket exchanges and earned commissions. From the documentation provided, Airline Reporting would determine the net amounts due Globemaster or owed by it to the various airlines. Thus, the reporting of ticket refunds by a travel agency to Airline Reporting created a credit in favor of the agency tantamount to a bank deposit. Similarly, the reporting of a ticket sale was equivalent to a debit or withdrawal.

Evidence was presented at trial showing that between May 8, 1989 and June 7, 1989, Smith purchased eighteen airline tickets in names other than her own for multiple-leg travel in foreign countries. These tickets consisted of several ticket coupons printed in two or more ticket booklets. These multi-leg tickets are known in the trade as "conjunctive tickets."

Smith and several employees under her direction reported as refunded each coupon of these conjunctive tickets. Globemaster was credited with the entire purchase price each time a coupon from the conjunctive ticket was reported as refunded. As a result, each foreign ticket was refunded multiple times, creating a pool of credits in Globemaster's bank account far exceeding the actual value of the conjunctive tickets originally issued and far exceeding the credit to which Globemaster was entitled. For example, if a conjunctive ticket, issued for a total cost of $3,000, contained five separate ticket coupons, by redeeming each coupon for the total amount of $3,000, Globemaster stood to receive $15,000 as credit refunds for a conjunctive ticket for which it was entitled to only $3,000. This was a classic case of "cooking the books."

In addition, some of the original eighteen conjunctive tickets were exchanged for additional conjunctive tickets, which were then split and either reported as refunded or exchanged for still more multi-leg tickets.

In the second stage of the scheme, the Appellant or her employees drew upon the pool of credits created by the multiple refunding of conjunctive tickets by issuing tickets for travel in the United States on domestic airlines. These domestic tickets were reported as cash sales, and Airline Reporting debited the pool of credits in Globemaster's account to show payment for the domestic tickets. Subsequently, the Appellant, together with some friends and various employees operating under her direction, redeemed these domestic tickets at airline ticket counters located in various airports throughout the United States, receiving cash or refund checks.

The government presented evidence at trial that the Appellant's scheme resulted in a loss of approximately $389,230.22 to the foreign airlines and approximately $184,533.50 to the domestic airlines. Evidence was also presented that the Appellant used the mails to effectuate her scheme. Each week, she had her employees mail to Airline Reporting's processing center in El Paso, Texas, Globemaster Travel's report which contained the fraudulent tickets, refund notices and exchange notices.

On June 28, 1989, after discovering the fraudulent activity at Globemaster Travel, Airline Reporting dispatched representatives

to the travel agency to seize their ticket stock and access plates. On that same day, the Appellant instructed one of her employees, Joann Gustin, to move money out of two of Globemaster's bank accounts. Ms. Gustin withdrew $12,683 from one and $115,494 from the other and deposited funds totalling $128,177 into her own account. On July 3, 1989, Gustin and the Appellant opened a bank account at First National Bank of Overland Park under a new name, LeShoppe Ltd., and deposited the entire $128,177. Within a four month period, the Appellant allegedly used the funds to pay personal debts.

At trial, Smith testified in her own defense. She said that she was unaware of any plan to create an inflated pool of credits in the Globemaster bank account by claiming multiple refunds of foreign airline tickets. She testified that she authorized the purchase of only six foreign airline tickets worth approximately $100,000 on her American Express card and the subsequent refund of those same tickets so that Globemaster could obtain the benefit of a 60–day float through the use of her credit card. She contended that Globemaster was suffering from cash flow problems and that she had developed the American Express card plan in order to reduce Globemaster's weekly liability to Airline Reporting. She testified that she did not intend to steal money, but to use her American Express card to obtain a legitimate credit float.

Significantly, the government noted that, at best, Smith's testimony explained only six of the 18 conjunctive tickets which formed the basis of the prosecution. The remaining 12 tickets were purchased with cash from Globemaster's account.

The Appellant was tried before a jury which returned a verdict of guilty on December 3, 1992 on all five counts and a special verdict ordering forfeiture on the remaining count. The court sentenced Smith to 48 months in prison, 3 years supervised release, imposed a special assessment of $250 and imposed a fine of $75,000.

After her trial, Smith unsuccessfully moved for a judgment of acquittal or, in the alternative, for a new trial on several grounds, some of which she has raised again on appeal.

## II.

On appeal, Smith contends that the district court committed reversible error by failing to give her requested good faith instruction concerning the mail fraud counts; that it committed plain error by including the word "attempt" in certain instructions dealing with mail fraud and by failing to give a specific unanimity instruction; that it erred by failing to dismiss Counts Two and Three of the indictment for failure to state an offense or, in the alternative, for failure to grant a new trial; and that it erred when it applied the sentencing guidelines by failing to group the mail fraud and money laundering offenses pursuant to U.S.S.G. § 3D1.2 and by double counting.

The appropriate standard of review for challenges to jury instructions is whether the jury, considering the instructions as a whole, was misled. *United States v. Mullins,* 4 F.3d 898, 900 (10th Cir.1993). Only where the reviewing court has "substantial doubt that the jury was fairly guided" will the judgment be disturbed. *Id.* We apply a de novo standard of review to determine the propriety of an individual jury instruction to which objection was made at trial. *United States v. Sasser,* 974 F.2d 1544, 1551 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993).

Where no objection was made to the giving of a jury instruction or its contents, we review only under the plain error standard. *United States v. Uresti–Hernandez,* 968 F.2d 1042, 1046 (10th Cir.1992). Plain error, in this context, is error that affects the defendant's right to a fair and impartial trial. *Id.* Similarly, we review a court's failure to instruct a jury for plain error if the defendant fails to raise the contention at trial. *United States v. Brown,* 996 F.2d 1049, 1052 (10th Cir.1993). In order to constitute plain error, the district court's error must have been both "obvious and substantial." *Id.* at 1053.

■ We review a district court's order granting or denying a motion to dismiss an indictment for abuse of discretion. *United States v. Strayer,* 846 F.2d 1262, 1265 (10th Cir.1988).

■ Under the Federal Sentencing Guidelines, we review the district court's findings of fact under the clearly erroneous standard and disputed legal issues under the de novo standard. *United States v. Levy,* 992 F.2d 1081, 1083 (10th Cir.1993).

### III.

■ We have concluded that the district court did not err by refusing to give a "good faith" instruction to the jury, because the Appellant did not present sufficient evidence to warrant the instruction. According to the district court:

> [D]efendant's proffered defense is not analogous to a good faith defense. Defendant basically argues that she was merely trying to float a loan though the use of her American Express card, and was not involved with the scheme as alleged by the government at all (or that in fact the scheme alleged by the government never existed).

App. of Appellant at 79.

In *United States v. Hopkins,* 744 F.2d 716, 717 (10th Cir.1984) (en banc), we explained that "good faith" is a defense to charges of using the mails to defraud and that "if the defense of good faith has been interposed the defendant is entitled to an instruction directly on the issue provided there is sufficient evidence to support the theory and such an instruction is requested." *Id.*

Smith contends that her extensive testimony as to her good faith belief that she was not doing anything illegal and that she was simply trying to access credit legitimately available on her American Express card is sufficient evidence to warrant a good faith instruction. We disagree. Implicit in our formulation of the good faith defense to charges of mail fraud is the requirement that for there to be " 'sufficient' evidence to support the theory," *Hopkins,* 744 F.2d at 717, the quantum of evidence must embrace the general contours of the fraudulent scheme alleged by the government. *See Sparrow v. United States,* 402 F.2d 826, 828 (10th Cir. 1968).

### A.

Our analysis must begin with a reference to the various components of the offense of fraud. Although fraud covers a proverbial multitude of sins, it is generically defined as:

> [a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to [the other] or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he [or she] shall act upon it to his [or her] legal injury.... "Bad faith" and "fraud" are synonymous....

*Black's Law Dictionary* (5th ed. 1979).

Intent is a necessary ingredient in proving the charge of fraud. Whether as generally construed or as specifically applied in the case before us, the "perversion of the truth" component has been equated with intentional misrepresentation, at least since 1889 when the House of Lords in the leading case of *Derry v. Peek,* 14 A.C. 337 (1889), redefined the tort of deceit and required this specific intent:

> The intent which underlies an intentional misrepresentation is a more complex matter than the relatively simple intention in the case of assault and battery. It involves the intent that a representation shall be made, that it shall be directed to a particular person or class of persons, that it shall convey a certain meaning, that it shall be believed, [ ] that it should be acted upon in a certain way ... [and that it] accomplish an ultimate purpose, as to benefit the [actor]....

W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and Keeton on the Law of Torts,* § 107 (5th ed. 1984).

The good faith defense seeks to demonstrate that there was no such intent: no misrepresentation, no intentional perversion

of the truth. Accordingly, the essence of the defense is that the evidence presented by the defendant, if believed by the fact finder, would completely rebut evidence that he or she intended to defraud.

The cumulative experience of the judiciary discloses that the defendant charged with mail fraud is entitled to the defense and the concomitant jury instruction only when her evidence, if believed, demonstrates that she in good faith actually believed (1) that the plan, howsoever visionary and impractical, would succeed, (2) that promises made would be kept and (3) that representations made would be fulfilled. *Hopkins,* 744 F.2d at 718; *United States v. Roylance,* 690 F.2d 164, 168 (10th Cir.1982); *Steiger v. United States,* 373 F.2d 133, 135 (10th Cir.1967). The good faith defense was intended as a *complete* defense to a charge of using the mails to defraud. *Sparrow,* 402 F.2d at 828.

If the only evidence presented by the government was the use by Smith of her American Express card in the purchase of six foreign conjunctive tickets, she probably would have been entitled to the good faith defense instruction to the mail fraud charges. But, the government presented more evidence, much more. The government's evidence showed that Smith's plan, if believed by the jury, included purchase of 12 of the 18 foreign conjunctive tickets with cash from Globemaster's bank account. This use of cash to buy 12 tickets was in no way explained, excused or mitigated by the use of a credit card to purchase six tickets. Thus, even if the jury would have accepted the Appellant's reasons for the use of the credit card, her evidence would not have negated the accusations of misrepresentation in obtaining 12 of the 18 tickets.

Moreover, the uncontroverted evidence disclosed that the Appellant not only used false names for the foreign tickets purchased with her American Express card, but after Airline Reporting credited her with the refunds of these tickets, she also issued domestic tickets under false names and had those tickets refunded. Subsequently, she authorized weekly reports containing false information regarding customer purchases and refunds. These activities in themselves were fraudulent. *See United States v. White,* 673 F.2d 299, 304–05 (10th Cir.1982) ("even if a defendant charged with fraud believed the business plan would ultimately succeed, that belief would not justify false or baseless representations").

To be entitled to the good faith defense instruction in a mail fraud prosecution, therefore, the defendant's evidence, if believed, must have the capacity to rebut all evidence of false and misleading conduct, all failures to disclose that which should have been disclosed and all matters that deceive and were intended to deceive another. A benign explanation of only some of the acts is insufficient and that is all that Brenda Lu Smith presented. Accordingly, we conclude that the district court did not err in refusing the instruction.

IV.

The Appellant next contends that the district court committed plain error by including the word "attempt" in the three instructions pertaining to mail fraud, because no scheme involving attempt was charged in the indictment. No objection to the instructions were made at trial. The Appellant presented this contention before the district court for the first time in her motion for a new trial. In rejecting the argument, the court noted:

> The language in Instructions 8 and 9 does not allow a jury to convict on the grounds that the defendant "attempted" to commit mail fraud. Rather, the instructions state that the government must prove that the defendant knowingly devised a scheme to obtain "or attempt to obtain" money or property. This language is in keeping with the well settled law that actual loss is not an element of mail fraud. *See United States v. Aigbevbolle,* 827 F.2d 664, 666 (10th Cir.1987).

App. of Appellant at 76.

We agree. The federal mail fraud statute reads in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by

means of false or fraudulent pretenses, representations, or promises, ..., for the purpose of executing such scheme or artifice *or attempting so to do,* places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service....

18 U.S.C. § 1341 (emphasis added).

The instructions are not at variance with the indictment. The indictment does not state that Smith obtained or attempted to obtain money, but that her purpose was to obtain money. Having such a purpose is consistent with devising a scheme to obtain or to attempt to obtain money. The district court's instructions tracked the language of the statute. Accordingly, we determine that the court committed no error.

■ In a related argument, the Appellant contends that the general jury instructions requiring that the jury return a unanimous verdict were insufficient in this case. She admits that general unanimity instructions "such as those given by the district court" often suffice, but she suggests that in a case involving mail fraud, the jurors should be instructed that they must all agree on the existence of, and defendant's participation in, the same scheme to defraud. Brief of Appellant at 33. Not only has the Appellant not made a specific showing of prejudice, she cites no authority for her position, except an article in a professional publication written by her appellate counsel.[1] There was no request for such an instruction at trial. Considering that the district court did provide a general unanimity instruction, we are persuaded that the court's failure to have read *sua sponte* Appellant's counsel's interesting article and not to have accepted its observations was not an obvious and substantial omission and thus did not constitute plain error.

## V.

■ The Appellant contends also that Counts Two and Three of the indictment

lacked the specificity necessary to allege a "scheme or artifice to defraud" and "obtain money or property by false pretenses." Her argument is anchored in the proposition that the factual averments of these counts had been contained in Count One, a count that was later dismissed. The mail fraud counts incorporated by reference the factual averments found in Count One. From this the Appellant argues that the counts on which she was convicted were infirm because they lacked the necessary factual specificity.

The Supreme Court put this argument to rest almost a century ago. In *Crain v. United States,* 162 U.S. 625, 633, 16 S.Ct. 952, 954, 40 L.Ed. 1097 (1896), *overruled on other grounds by Garland v. Washington,* 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914), the Court held:

> One count may refer to matter in a previous count so as to avoid unnecessary repetition; and, if the previous count be defective or is rejected, that circumstance will not vitiate the remaining counts, if the reference be sufficiently full to incorporate the matter going before with that in the count in which the reference is made.

The Appellant attempts to distinguish *Crain* on the ground that the trial court in that case did not dismiss certain counts in the indictment until after the trial, whereas here Count One was dismissed prior to trial. At least one Court of Appeals has found this to be a distinction without a difference. *United States v. Weiner,* 578 F.2d 757, 776 (9th Cir.) (dismissal of one count of an indictment prior to trial which is referred to in the remaining counts does not vitiate the remaining counts where the reference is sufficient), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). We agree.

We are satisfied that the government has met the two-part test to review the sufficiency of an indictment:

> "First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be

---

1. James R. Wyrsch & Jacqueline Cook, *Jury Unanimity: A Requirement of Due Process,* The Champion 18 (June 1992) (Suggesting the use of special interrogatories to find elements of the charged offense and noting that specific "issues regarding jury unanimity may be addressed through jury instructions").

prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause." *United States v. Darrell*, 828 F.2d 644, 647 (10th Cir.1987) (quoting *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976)). This test is based upon the provisions of Rule 7(c)(1) of the Federal Rules of Civil Procedure, which provide that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(1) also states that "[a]llegations made in one count may be incorporated by reference in another count."

## VI.

Finally, the Appellant contends that the district court committed two errors in computing her sentence: in failing to group the mail fraud and money laundering offenses pursuant to U.S.S.G. Section 3D1.2 and in improperly enhancing, by impermissible double counting, Smith's offense level under both Section 2F1.1(b)(2) and Section 3B1.1(a).[2] We are not persuaded by either argument.

## A.

■ Section 3D1.2 provides in pertinent part:

All counts involving substantially the same harm shall be grouped together into a single Group.... Counts involve substantially the same harm within the meaning of this rule:

   .     .     .     .     .

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

The Appellant argues that the mail fraud and money laundering offenses should be grouped together under subsection (c) because the mail fraud count was used as a "specific offense characteristic" in the appli-

cation of the guideline section applicable to money laundering, Section 2S1.2(b)(1)(B). The application notes to subsection (c) provide that "when conduct that represents a separate count, *e.g.*, bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor." Section 2S1.2 entitled "Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity" provides for a two level enhancement if the "defendant knew that the funds were the proceeds of: (B) any other specified unlawful activity."

The Appellant contends that because the money laundering offense level was adjusted based on her mail fraud, the two offenses must be grouped together, and she analogizes to *United States v. Riviere*, 924 F.2d 1289, 1306 (3d Cir.1991). In *Riviere*, the court held that the district court should have grouped the three firearm offenses of which the defendant was convicted under Section 3D1.2. Riviere was convicted of possession of firearms by a felon, delivery of firearms to a common carrier and possession of altered firearms. The court reasoned that the guidelines had already provided for an enhanced penalty for possession of a firearm by a felon if that firearm was altered and to enhance further for possession of an altered firearm would violate Section 3D1.2.

We believe that *Riviere* is not applicable to the present case and that the district court properly followed the teachings of *United States v. Johnson*, 971 F.2d 562 (10th Cir. 1992), where we concluded that money laundering counts should not be grouped with wire fraud counts because there are different victims and separate and distinct losses. The Appellant attempts to distinguish *Johnson* on the grounds that the court did not address subsection (c) or the provisions of Section 2S1.2.

We are not impressed by this argument but for the sake of completeness we now

---

**2.** The district court applied the 1988 Sentencing Guidelines in their entirety to the instant sentencing. App. of Appellant at 208.

observe that Section 2S1.2 refers to the knowledge of the perpetrator; it does not relate to the commission of a crime. It would seem that application of the enhancement would be possible even if the Appellant herself had not actually committed the mail fraud, but instead had mere knowledge of the money's origins. The critical characteristic of the money laundering offense was not the commission of mail fraud, but Smith's knowledge of it.

The district court did not err in declining to group the money laundering and mail fraud offenses under the Sentencing Guidelines.

### B.

■ Finally, the Appellant contends that the district court erred by enhancing her offense level under both Section 2F1.1(b)(2) and Section 3B1.1(a) of the Sentencing Guidelines. She says that relying on the same acts to support two separate guideline enhancements constitutes double counting.

Section 2F1.1(b)(2), the sentencing guideline for crimes involving fraud or deceit, provides for a two level enhancement if the offense involves "more than minimal planning." Section 3B1.1(a) provides a four level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The district court concluded that application of both of these guideline enhancements was not double counting because the " 'more than minimal planning' guideline focuses on the nature of the offense, while the role in the offense guideline focuses on the size of the organization and the defendant's relative culpability compared to others involved." App. of Appellant at 209.

We do not write on a clean slate here. In *United States v. Chichy*, 1 F.3d 1501, 1506 (6th Cir.1993), the court held that a two-level enhancement for doing more than minimal planning and being organizer, leader, manager or supervisor constituted impermissible double counting. The court reasoned that once certain conduct is used to enhance a defendant's sentence under one enhancement

provision, the defendant should not be penalized for the same conduct under a separate provision. *Id.* Although *Chichy* supports the Appellant's position, this holding is the minority, if not isolated, view of the many Courts of Appeals that have also addressed this issue. We are not persuaded to follow it.

Contrary to the holding of the Sixth Circuit Court of Appeals, in *United States v. Wong*, 3 F.3d 667, 671 (3d Cir.1993), the court decided that the sentencing guideline enhancements for more than minimal planning and for acting as organizer, leader, manager or supervisor could be applied in tandem without constituting impermissible double counting. The court reasoned that by doing so they were effectuating the intent of the Sentencing Commission in enacting these two guideline provisions. *Id.* On the one hand, the adjustment for more than minimal planning is "a specific offense characteristic which was intended to distinguish between relatively simple crimes and more sophisticated ones." *Id.* On the other hand, the adjustment for role in the offense "addresses concerns about the relative responsibilities of those involved in the commission of the offense, punishing those more harshly who assume a leadership role." *Id.* at 672. We believe that the reasoning of the Third Circuit Court of Appeals is sound and so do the other Courts of Appeals who have addressed this issue. *See United States v. Balogun*, 989 F.2d 20, 24 (1st Cir.1993); *United States v. Willis*, 997 F.2d 407, 418 (8th Cir.1993); *United States v. Kelly*, 993 F.2d 702, 705 (9th Cir.1993); *United States v. Boula*, 932 F.2d 651, 655 (7th Cir.1991). Accordingly, in the view we accept, the district court did not engage in impermissible double counting.

### VII.

We have considered all contentions presented by the Appellant. To the extent not discussed herein, any other arguments must be deemed considered and rejected.

We AFFIRM the judgment of the district court.