**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL K. FRIERSON,

    Defendant-Appellant.

No. 99-3378

(D.C. No. 99-CR-10009-2)
(D.Kan.)

**ORDER AND JUDGMENT** *

Before **EBEL** and **BRISCOE,** Circuit Judges, and **COOK**, District Judge. **

    Michael Frierson appeals his convictions and sentences on two counts of interstate transportation of counterfeit securities, in violation of 18 U.S.C. §§ 2314 and 2. We exercise jurisdiction under 28 U.S.C. § 1291, affirm in part, reverse in part, and remand with directions to vacate.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable H. Dale Cook, Senior District Judge, Northern District of Oklahoma, sitting by designation.

On January 26, 1999, Frierson was indicted on two counts of interstate transportation of counterfeit securities. The charges stemmed from two checks that were mailed from San Leandro, California, to Wichita, Kansas, in February 1998. At trial, Jad Wolf testified that in February 1998 Frierson told him arrangements were being made for fraudulent checks to be sent to Wichita. Wolf was to deposit the checks, withdraw the cash, and give the cash to Frierson and his brother, Brian Frierson. Gerald Farha, who ran Farha Enterprises Used Cars in Goddard, Kansas, testified he received a Federal Express package with two $400,000 checks in February 1998. The package had been shipped by Avery Jackson, Parkridge Financial, 256 Suffolk Drive, San Leandro, California, which was Frierson's mailing address.

Farha gave the envelope with the checks to Wolf, and Wolf then gave them to Randy Wolverton, special agent for the Federal Bureau of Investigation in Wichita. The checks were dated February 12, 1998, and were each in the amount of $400,000. They were drawn on the account of "Dean Witter Reynolds Inc." at the Bank of America in Walnut Creek, California, and were payable to Farha Used Cars. Phyllis Werneke, operations manager at Dean Witter in Wichita, testified the checks did not conform to Dean Witter standards, the information on the checks was incorrect, and to her knowledge the checks were not authorized

by Dean Witter.  Werneke also testified she had seen a third Dean Witter check for $600,000.

The government introduced audiotape recordings of monitored telephone conversations in April 1998 between David Miller and Frierson.  Frierson called Miller and asked him to find out about the two checks.  Firerson stated Farha and Wolf had the checks and he wanted the money or the checks.

There was also testimony at trial concerning a $1.5 million check.  Miller testified that in November or December 1997, Frierson asked him whether he knew anyone who would cash a large check.  Miller agreed to participate and had the $1.5 million check sent to Las Vegas, where Farha and Wolf were to cash it.  Frierson told Miller that someone at Dean Witter was obtaining the check.  Wolverton testified that in January 1998 someone attempted to pass a $1.5 million check at a casino in Las Vegas.  Wolf testified that in January 1998, he went to Las Vegas and picked up the check made out to a fictitious name, along with false identification.  Farha accompanied Wolf when he tried to cash the check at two casinos in Las Vegas.  According to Wolf, Frierson's brother came to his hotel room and picked up the check after Wolf was unable to cash it.  In a recorded conversation between Frierson and Miller in April 1998, Frierson said he had the Las Vegas check.

The district court denied Frierson's motion for judgment of acquittal and

3

the jury convicted him on both charges. The district court sentenced Frierson to 37 months in prison for each count, to run concurrently; 3 years supervised release for each count, to run concurrently; and a $100 special assessment on each count.

II.

*Frierson's Sentences*

The district curt determined Frierson had a criminal history category of 2 based on a prior conviction. Frierson argues his prior sentence was to a work program, which was not a "sentence of imprisonment" under U.S.S.G. § 4A1.1(b). Frierson did not raise this objection in the district court, which would normally preclude review by this court. See United States v. Nelson, 36 F.3d 1001, 1003 (10th Cir. 1994). However, we recognize a narrow exception for plain error when the error is "particularly egregious." Id.

The presentence report stated Frierson had a 1995 California conviction for vehicle theft and two counts of fraudulent use of an access device that resulted in "3 years probation; 180 days custody in work release." ROA Vol. X at 7. Frierson's attorney objected to the presentence report, stating:

> . . . I have a strong belief that Mr. Frierson's criminal history significantly overrepresents his true criminal nature. He is in Category II based solely on a single misdemeanor conviction 4 years ago. The only reason he received 2 rather than 1 point is due to the fact that he was incarcerated in work release for part of the sentence. He did not have counsel, which he waived, and I feel this may have

4

affected the outcome of that case. In most situations, a first offender for such a minor offense would have received a straight probation with no jail which would have resulted in 1 criminal history point.

ROA Vol. X at 18. At the sentencing hearing, Frierson's attorney stated

[Frierson] also couldn't remember that he had actually served any jail time . . . because the work release was the type where he [] drove to the place, checked in and they told him he needed to go to be assigned to work. Wasn't really a confinement setting, from my understanding, based on what I talked to Mr. Frierson about, at all, and although *I technically agree that it qualified*, . . . it just was very unusual under the circumstances.

ROA Vol. IV at 223-24 (emphasis added). Frierson's counsel then stated that

it was simply one crime, but for the nature of the sentence imposed could have been in criminal history category 1 as opposed to 2. To me that takes it out of the heartland of those individuals who would typically be considered in a criminal history category 2. I ask the Court to consider . . . the appropriate departure under those circumstances, and that would be to drop one level to criminal history category 1 and impose the sentence in that range based on that.

Id. at 224. The district court concluded Frierson's criminal history was not overrepresented and overruled Frierson's objection.

U.S.S.G. § 4A1.1(b) provides that in calculating a defendant's criminal history category the district court is to "[a]dd 2 points for each prior sentence of imprisonment of at least sixty days," and less than one year and one month. The guidelines define "sentence of imprisonment" as "a sentence of incarceration and refer[] to the maximum sentence imposed." U.S.S.G. § 4A1.2(b)(1). Frierson did not object, and in fact agreed, to the district court's determination that his

5

previous sentence qualified as a term of imprisonment under § 4A1.2(b)(1).

The application notes to § 4A1.2(b)(1) state that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." U.S.S.G. § 4A1.2, comment. (n.2). This court has noted that the phrase "sentence of incarceration" in § 4A1.2(b) "suggests that physical confinement is a key distinction between sentences of imprisonment and other types of sentences." United States v. Vanderlaan, 921 F.2d 257, 259 (10th Cir. 1990). The burden is on the government to prove by a preponderance of the evidence whatever facts are necessary to justify adding criminal history points. United States v. Torres, 182 F.3d 1156, 1162 (10th Cir. 1999). We conclude the government met this burden. The presentence investigation report listed Frierson's prior sentence as "180 days custody in work release" and Frierson's attorney admitted this sentence qualified as a prior term of imprisonment under § 4A1.2(b)(1). Failure to object to a fact in a presentence report, or failure to object at the sentencing hearing, acts as an admission of fact. United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994). The district court's determination of Frierson's criminal history was not plain error.

Frierson argues the district court erred in determining that the $1.5 million Las Vegas check was relevant conduct for offense level purposes. We review "the district court's legal interpretation and application of the sentencing

6

guidelines de novo and review the court's factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Henry, 164 F.3d 1304, 1310 (10th Cir.), cert. denied, 527 U.S. 1029 (1999). The district court concluded the Las Vegas check was relevant conduct and increased Frierson's base offense level by 12 levels because the loss exceeded $1,500,000. See U.S.S.G. § 2F1.1(b)(1)(M) (detailing offense levels).

U.S.S.G. § 1B1.3(a) provides for the determination of a defendant's offense level when the guidelines specify more than one base offense level. Section 3D1.2(d) requires grouping "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss," as is the case here. U.S.S.G. § 3D1.2(d); see U.S.S.G. § 2F1.1(b)(1). There are three requirements for conduct to be relevant under § 1B1.3(a)(2): (1) "the offense in question involved conduct described in §§ 1B1.3(a)(1)(A) and (B)," (2) "the offense must be the type of offense that, if the defendant had been convicted of both offenses, would require grouping with the offense of conviction for sentencing purposes under U.S.S.G. § 3D1.2(d)," and (3) "the offense must have been 'part of the same course of conduct or common scheme or plan.'" United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996) (quoting U.S.S.G. § 1B1.3(a)(2)). Frierson argues the government did not prove the offense was part of the same course of conduct or common scheme or plan.

"To determine whether a prior offense is conduct related to the instant offense, courts generally examine several factors, including the similarity, temporal proximity, and regularity of the instant offense and the prior sentence." United States v. Torres, 182 F.3d 1156, 1160 (10th Cir. 1999). The government must prove the facts of relevant conduct by a preponderance of the evidence. United States v. Fortier, 180 F.3d 1217, 1225 (10th Cir. 1999).

Here, the evidence showed Frierson was involved in a conspiracy to cash fraudulent checks. The charged Wichita checks involved Frierson, his brother, Farha, Miller, and Wolf. The Las Vegas check involved the same parties. The check-cashing schemes were similar, if not in fact a continuation of the same scheme. The Las Vegas check and the Wichita checks were sent less than a month apart. The recorded conversations between Frierson and Miller show the continuing nature of the scheme. We conclude the district court did not err in considering the Las Vegas check as relevant conduct.

*Frierson's convictions*

Frierson argues there was insufficient evidence to convict him of interstate transportation of counterfeit securities. In reviewing the sufficiency of evidence, we review "the evidence to determine whether, if taken in the light most favorable to the prosecution, it is sufficient for a reasonable jury to find the

8

defendant[] guilty beyond a reasonable doubt." United States v. Mounkes, 204 F.3d 1024, 1027 (10th Cir.), cert. denied, 120 S. Ct. 2661 (2000). "The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt." Id. (citation omitted). To convict Frierson of interstate transportation of counterfeit securities the government must prove (1) Frierson "caused the securities to be transported in interstate commerce," (2) at the time Frierson caused "the transportation of the securities, the securities were altered," (3) Frierson "knew, at the time he caused the securities to be transported interstate, that the securities were altered," and (4) Frierson "acted with unlawful or fraudulent intent." United States v. Yusufu, 63 F.3d 505, 509-10 (7th Cir. 1995).

Frierson argues the witnesses were so incredible that a jury could not convict him based on their testimony. Judging the credibility of witnesses is a function of the jury, which this court will not second-guess on appeal. See United States v. Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999). In any event, Frierson's credibility arguments were presented to the jury. While testifying, Miller admitted the government had filed a motion to reduce his sentence based on his cooperation in testifying and that he had a prior conviction for cocaine possession. Frierson's attorney stressed the credibility of witnesses in closing argument. Frierson also presented the jury with his argument about the reliability of the FedEx package.

9

After examining the record, we conclude there was sufficient evidence for the jury to convict Frierson of interstate transportation of counterfeit securities. Frierson was charged both as a principal and an aider and abettor. Wolf testified Frierson said he was arranging for fraudulent checks to be sent to Wichita and Frierson stated the checks were to be cashed at casinos. The audiotapes of Frierson's conversations with Miller show Frierson's knowledge of, and participation in, the scheme. The evidence showed that Frierson either sent the checks from California to Wichita or was involved in having them sent, that Frierson knew the checks were not legitimate before they were sent, and that Frierson had the intent to defraud.

Frierson contends the district court erred in admitting testimony about the $1.5 million Las Vegas check and the $600,000 check. Frierson did not object to the evidence at trial. This court generally reviews the district court's evidentiary rulings for abuse of discretion. United States v. Brown, 200 F.3d 700, 708 (10th Cir. 1999), cert. denied, 120 S. Ct. 1213 (2000), cert. denied sub nom., Dixon v. United States, 120 S. Ct. 1706 (2000). However, when the defendant does not object to the admission of the testimony, we review the admission only for plain error. United States v. McSwain, 197 F.3d 472, 482 (10th Cir. 1999), cert. denied, 120 S. Ct. 2024 (2000). "Plain error is that which is obvious, or which seriously affects the fairness or integrity of the trial." United States v. Deters,

10

184 F.3d 1253, 1258 (10th Cir. 1999) (citation omitted).

Federal Rule of Evidence 404(b) provides in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The questioning concerning the $1.5 million Las Vegas check focused on the witnesses' participation in that situation rather than on Frierson's participation. The evidence of this check showed the intent to pass fraudulent checks, which is one of the stated bases for admitting prior crimes evidence under Rule 404(b). Further, the record does not indicate that admission of the testimony seriously affected the fairness of the trial.

Evidence concerning the $600,000 check came in through Frierson's cross-examination of Werneke. During direct examination, Werneke stated she was given copies of three different checks. She did not testify further concerning the third check. During cross-examination, Frierson's attorney asked Werneke specific questions about the $600,000 check and moved for admission of the check into evidence. Under the invited error doctrine, Frierson cannot now contend that admission of the $600,000 check into evidence was erroneous. See United States v. Johnson, 183 F.3d 1175, 1179 n.2 (10th Cir. 1999) (stating that "[t]he invited error doctrine prevents a party from inducing action by a court and

11

later seeking reversal on the ground that the requested action was error").

Frierson also argues the district court erred in not *sua sponte* giving the jury a limiting instruction on its consideration of uncharged misconduct evidence. Frierson did not request such an instruction at trial. "[W]e review a court's failure to instruct a jury for plain error if the defendant fails to raise the contention at trial." United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994). "Plain error, in this context, is error that affects the defendant's right to a fair and impartial trial." Id. To constitute plain error, the district court's error must have been both obvious and substantial. Id. The failure of the district court to give a limiting instruction was not plain error. As discussed above, there was sufficient evidence without the $1.5 million check to convict Frierson of the charged offenses.

Frierson also contends this court should vacate his conviction and sentence on the second count of interstate transportation of counterfeit securities because both the first and second counts stem from the same "unit of prosecution." The government agrees. In United States v. Lovett, this court accepted the defendant's argument that "the appropriate unit of prosecution for a violation of 18 U.S.C. § 2314 is the number of transportations across state lines, not the number of financial transactions with each financial institution." 964 F.2d 1029, 1040-41 (10th Cir. 1992). Frierson was charged with two counts of interstate

12

transportation of counterfeit securities for one transportation across state lines. Therefore, we remand this case to the district court for the limited purpose of vacating Frierson's conviction, sentence, and special assessment on count two.

III.

We AFFIRM Frierson's conviction, sentence, and special assessment on count one, and REMAND this case to the district court with directions to VACATE Frierson's conviction, sentence, and special assessment on count two.

Entered for the Court

Mary Beck Briscoe
Circuit Judge