**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEE E. ROBBINS,

Defendant-Appellant.

No. 06-5014
(D.C. No. 04-CR-104-01-K)
(N.D. Okla.)

**ORDER AND JUDGMENT** [*]

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

Appellant Lee E. Robbins was convicted by a jury of fifteen counts of tax fraud. In this direct criminal appeal, Mr. Robbins challenges the district court's denial of his motion for severance, the adequacy of the verdict form, the calculation of tax loss for sentencing purposes, and the imposition of costs of prosecution.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Robbins & Associates (R&A) was a bookkeeping and tax return preparation business which helped clients minimize their tax payments and maximize their refunds by falsely characterizing nondeductible personal expenses as deductible business expenses. Mr. Robbins, the principal of R&A, recruited, hired, and trained his co-defendant Gabriel Bonner for work in R&A's office in Tulsa, Oklahoma. After Mr. Robbins moved to Georgia and opened an Atlanta office, he left Mr. Bonner in charge of the Tulsa office. Mr. Robbins continued to review Mr. Bonner's work and he e-filed the returns prepared at both offices.

The government charged Mr. Robbins and Mr. Bonner with conspiracy to defraud the IRS, Mr. Robbins with 15 counts of aiding and assisting the preparation and submission of false and fraudulent tax returns in violation of 26 U.S.C. § 7206(2), and Mr. Bonner with 50 different counts of the same crime. Before trial, Mr. Robbins moved for separate trials, arguing that he would be prejudiced by being tried with Mr. Bonner. The district court denied the motion and the parties proceeded to their joint trial.

At the close of evidence, Mr. Robbins renewed his motion for severance and the district court again denied it. The jury reached a verdict acquitting Mr. Bonner on all counts and finding Mr. Robbins not guilty of conspiracy but guilty of the 15 individual counts. The district court denied Mr. Robbins' motion for a new trial and sentenced him to a total of 41 months' imprisonment, based on

a tax loss of over $400,000. It also ordered him to pay the costs of prosecution in the amount of $11,430.66, as provided by § 7206.

## II.

On appeal, Mr. Robbins first asserts that the district court erred in denying his motion for a severance because his defense was antagonistic to that of Mr. Bonner. A motion for severance based on conflicting defenses triggers "a three-step inquiry" on the part of the trial court. *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007). The first step requires a determination of "whether the defenses presented are so antagonistic that they are mutually exclusive," so that "the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other." *Id.* (quotations omitted). Next, "because mutually antagonistic defenses are not prejudicial per se, a defendant must further show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quotations and alterations omitted). "[I]f the first two factors are met, the trial court exercises its discretion and weighs the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (quotations and alterations omitted). "Where the trial court ultimately denies severance," this court will reverse the decision "only where the defendant has demonstrated an abuse of discretion." *Id.*

At trial, Mr. Robbins and Mr. Bonner each attempted to cast all blame for tax fraud on the other. Mr. Robbins illustrates the antagonistic nature of their defenses by pointing out that Mr. Bonner testified that it was Mr. Robbins who "caused all the wrong and illegal tax returns to be filed." Aplt. Br. at 21. And, according to Mr. Robbins, "Bonner's counsel sought to deliberately undermine Robbins' defense at trial with every witness so that Bonner appeared only to be someone who was a data clerk." *Id.* at 10. Mr. Robbins also complains that Mr. Bonner's counsel acted as an "additional prosecutor" by identifying himself as a former prosecutor and telling the jury to disbelieve the arguments made by Mr. Robbins' attorney. *Id.* at 15.

Mr. Robbins has shown that he and Mr. Bonner presented defenses which "were sufficiently exclusive and antagonistic." *Pursley*, 474 F.3d at 765. Nevertheless, he has not established the specific prejudice required at the second analytic step. "[D]efendants are not entitled to severance merely because they may have a *better chance* of acquittal in separate trials." *Id.* at 766 (quotation and alteration omitted). "Despite their differing theories of defense, nothing prevented [Mr. Robbins] from presenting evidence [or argument] to support his theory even if it was inconsistent with [Mr. Bonner's] defense." *Id.*

Because Mr. Robbins did not demonstrate the requisite prejudice, there is no need "to explicitly engage in the third step of our inquiry–weighing prejudice to the defendant against considerations of judicial economy." *Id.* at 767. On this

record, the district court's denial of the motion to sever does not amount to an abuse of discretion.

III.

Mr. Robbins next argues that he is entitled to a new trial because the jury verdict form was "irregular" and "bogus." Aplt. Br. at 7, 31. We review the propriety of verdict forms under an abuse of discretion standard. *United States v. Stiger*, 413 F.3d 1185, 1190 (10th Cir. 2005). Applying that standard, we will reverse only if we have "substantial doubt that the jury was fairly guided." *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (quotation omitted). Moreover, because there was no objection at trial, we review only for plain error, which is "error that affects the defendant's right to a fair and impartial trial." *Id.*

Mr. Robbins argues that the only possible explanation for the jury's acquittal of Mr. Bonner and conviction of Mr. Robbins is confusion attributable to the verdict form. Aplt. Br. at 27. The verdict form submitted to the jury was a table with columns providing the date of each charged offense, the name of the filing taxpayer, and a place for the jury foreperson to circle either "guilty" or "not guilty." R., Vol. I, Doc. 72. In his closing argument, Mr. Robbins' attorney advised the jurors that the table "mirrors the one in the indictment and it has on there the years and so forth. . . . If you correlate the exhibits with the chart, you should be able to make your decisions on these individual counts." *Id.*, Sup'l Vol. II, at 35.

-5-

On appeal, however, Mr. Robbins claims the form is flawed for failure to "set out details of each count." Aplt. Br. at 7. We have previously held that "[t]he purpose of the verdict form is not to repeat the elements of the offense. The language on the form serves only to identify where the jury should indicate its verdict on each count. . . . The fact that the question on the verdict form does not contain the language the instructions contain is immaterial." *United States v. Overholt,* 307 F.3d 1231, 1248 (10th Cir. 2002). The form submitted to the Robbins/Bonner jury fulfilled its intended purpose. As a consequence, we see no error in connection with the jury verdict form.

IV.

Mr. Robbins asserts that the district court erred in calculating the tax-loss amount attributable to his crimes, a determination which affects his sentence under the advisory Federal Sentencing Guidelines. *See* U.S.S.G. § 2T1.1. On guideline issues, we review legal questions *de novo*, factual findings for clear error, and give due deference to the district court's application of the guidelines to the facts. *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).

In determining the total tax loss, "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1, cmt. n.2. *See also United States v. Hayes*, 322 F.3d 792, 801-02 (4th Cir. 2003) (holding that tax loss may include amounts in returns prepared by

the defendant but not included in the indictment). The tax loss proved at trial amounted to $376,000. At the sentencing hearing, the government produced two tax-filer witnesses, whose false returns were not included in the indictment, and an IRS agent. Partially crediting the witnesses' testimony, the district court found that Mr. Robbins was responsible for an additional loss in the amount of $90,675. Under the guidelines, this additional amount increased Mr. Robbins' base offense level by two points. *See* U.S.S.G. §§ 2T1.1(a), 2T4.1 (Tax Table).

Mr. Robbins asserts that the trial court improperly based the tax-loss amount on surprise testimony relating to returns not listed in the indictment and not considered by the jury. As for the alleged "surprise" aspect of the testimony, we note that defense counsel objected to the appearance of the witnesses, but did not ask for a recess or continuance to develop rebuttal evidence. *See* R., Vol. XII at 4. And after the district court overruled the objection, Mr. Robbins' counsel thoroughly cross-examined the witnesses. Thus, there is no indication that the government used an element of surprise to present misinformation to the court. *Cf. United States v. Sunrhodes*, 831 F.2d 1537, 1542 (10th Cir. 1987) ("Due process insures that a defendant will not be sentenced on the basis of 'misinformation of a constitutional magnitude.'") (citation omitted).

An equally unavailing contention is that the teachings of *United States v. Booker*, 543 U.S. 220 (2005) prohibit the inclusion of tax loss arising from uncharged conduct that was not proven beyond a reasonable doubt. It is now

well-settled that *Booker* does not preclude "judicial fact-finding by a preponderance of the evidence standard" at the sentencing stage unless the factual findings "operate[] to increase a defendant's sentence mandatorily." *United States v. Hall* 473 F.3d 1295, 1312 (10th Cir. 2007). Here, the district court explicitly "recognize[d] that the guidelines are advisory and not mandatory." R., Vol. XII at 78. The district court committed no clear error in determining that Mr. Robbins caused a tax loss in excess of $400,000 and sentencing him based on that amount.

V.

Mr. Robbins' final issue is his claim that the district court committed error in ordering him to pay $11,430.66 as the costs of prosecution without hearing evidence to justify the assessed amount. The imposition of the costs of prosecution is mandatory under the controlling statute, which provides that a person convicted of filing a false tax return "*shall* be fined not more than $100,000 . . . , or imprisoned not more than 3 years, or both, together with the costs of prosecution." 26 U.S.C. § 7206 (emphasis added).

The presentence report (PSR) was the source of the assessed amount. In his written response to the PSR, Mr. Robbins objected generally to the imposition of the costs of prosecution, but made no objection to the proposed amount. Outside of the *Booker* context, a court may rely "on . . . unobjected-to facts

for . . . sentencing purposes." *United States v. Wolfe,* 435 F.3d 1289, 1299 (10th Cir. 2006).

This practice is consistent with Fed. R. Crim. P. 32(i)(3)(A), which obliges a defendant "to point out factual inaccuracies included in the PSR. And requiring a defendant to challenge any factual inaccuracies in the PSR before or during sentencing permits the district court to address those objections at a time and place when the district court is able to resolve those challenges." *Id.*

Moreover, Mr. Robbins was given a second opportunity to make an appropriate objection. At the sentencing hearing, the district court made findings of fact, including a determination that costs of prosecution amounted to $11,430.66. It then specifically asked if there were "[a]ny objections to the Court's findings of fact that haven't already been discussed." R., Vol. XII at 69. Mr. Robbins' counsel responded that he had no further objections.

Contrary to Mr. Robbins' contentions, an objection to the imposition of prosecution costs is analytically distinct from an objection to the calculation of the amount of those costs. Because Mr. Robbins did not make a proper objection at the appropriate time, we review the costs issue for plain error. *United States v. Traxler*, Nos. 05-2370, 06-2179, 2007 WL 614266, *6 (10th Cir. Mar. 1, 2007). And we find no such error in the district court's adoption of the amount of prosecution costs proposed in the PSR.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge